UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
IN RE:

      EDWARD P. SHEER                CASE NO. 04-64603

                  Debtor        Chapter 13

--------------------------------------------------------
SHARON R. SHEER

              Plaintiff

          vs.             ADV. PRO. NO. 04-80279

EDWARD P. SHEER

             Defendant
--------------------------------------------------------
APPEARANCES:

LAW OFFICES OF THOMAS J. VALERINO    THOMAS J. VALERINO, ESQ.
Attorneys for Plaintiff                   Of Counsel
307 South Clinton St., Suite 200
Syracuse, NY 13202

KALL & REILLY, LLP                 SHELDON G. KALL, ESQ.
Attorneys for Defendant                 Of Counsel
3522 James Street
Syracuse, NY 13206


Hon. Stephen D. Gerling, Chief U.S. Bankruptcy Judge


**MEMORANDUM-DECISION, FINDINGS OF FACT,
CONCLUSIONS OF LAW AND ORDER**


      Under consideration by this Court is an adversary proceeding commenced on December

7, 2004, by Sharon R. Sheer ("Plaintiff") by the filing of a complaint ("Complaint") against

Edward P. Sheer ("Debtor"), seeking a determination of nondischargeability of a debt owed by

2

the Debtor to the Plaintiff pursuant to § 523(a)(5) of the Bankruptcy Code, 11 U.S.C. §§ 101-

1330 ("Code").  Issue was joined by the filing of an answer by the Debtor on December 23, 2004.[1]

A trial was held in Utica, New York, on December 5, 2005, at which both the Plaintiff and

the Debtor testified.[2]  Following the trial, the Court granted the parties the opportunity to file

memoranda of law in lieu of closing arguments by January 13, 2006.  The deadline was extended

at the request of the parties to January 23, 2006, at which time the matter was submitted for

decision by the Court.

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this adversary

proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1), and (b)(2)(I).

---

[1] In the Answer, filed by Peter Talev, Esq., on behalf of the Debtor, the assertion was made that the complaint was untimely because the deadline for filing an objection to the dischargeability of a debt was September 28, 2004.  However, the Court finds no merit to that argument given the fact that Rule 4007(b) of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.") provides that a complaint "other than under § 523(c)" may be filed at any time.  Code § 523(a)(5) is not included in the list of applicable subsections of Code § 523(a) identified in Code § 523(c) which are subject to the 60 day limitation set forth in Fed.R.Bankr.P. 4007(c).

[2] On August 10, 2005, the Court signed an Order granting Talev's motion to withdraw as Debtor's attorney.  At the trial, the Debtor was represented by Sheldon G. Kall, Esq., of the law firm of Kall & Reilly, LLP.

# FACTS

Plaintiff testified that she and the Debtor were married on April 28, 2001.  In January 2003, she commenced an action in New York State Supreme Court, Onondaga County ("State Court") seeking a divorce.  Pursuant to the terms of a Temporary Order, signed by the Hon. Brian F. DeJoseph on March 11, 2003, the Debtor was required to pay the Plaintiff $50 per week "as and for temporary spousal support," commencing March 21, 2003.  *See* Debtor's Exhibit 4.[3]  The Debtor was also required to make a lump sum payment of $400, representing the past due obligation for the period from January 17, 2003 through March 14, 2003.  *Id.*  It was the Plaintiff's testimony that the monies were used to pay down credit card debt incurred during the marriage by both parties for, *inter alia*, wedding expenses, clothing, food and vacations.

On August 14, 2003, the parties entered into a stipulation ("Stipulation") in open court before Justice DeJoseph as part of the resolution of the State Court divorce action.[4]  *See* Debtor's Exhibit 3.  As set forth in the Stipulation, the total marital debt as of August 14, 2003, was $28,521.59.  *See* Debtor's Exhibit 3 at 7.  Debtor's counsel in the State Court divorce action represented to Justice DeJoseph that "[a]fter much consideration on the issues of equitable distribution, the parties have agreed that totally they have marital assets in the total sum of $11,391.20, two of which consist of 2002 income tax refunds . . . and the other one is a 1979

---

[3]  At the end of the testimony on December 5, 2005, the Court noted that while there had been testimony regarding the Temporary Order, it had not been offered into evidence.  On the record, the parties stipulated to its admission, a copy having been attached to the Complaint.

[4]  Attached to the Complaint is a copy of a Judgment of Divorce, signed by Judge DeJoseph on January 8, 2004, which was not offered or stipulated into evidence at the trial and, therefore, will not be considered by this Court in rendering its decision.

4

Chevrolet Corvette." *Id.* at 5-6.   Under the terms of the Stipulation, these were deemed the sole

property of the Plaintiff.   That amount was credited against the total marital debt, leaving "net

marital debt" in the amount of $17,130.39, comprised of debt on credit cards, all of which were

in the Plaintiff's name.   Under the terms of the Stipulation, the parties agreed to divide the debt

equally.   The Debtor agreed to pay to the Plaintiff $230.15 per month over 48 months at 13.5%

interest. *Id.* at 8.   At the trial, the Plaintiff testified that the interest rate was calculated based on

the average charges on the credit cards to be paid and the interest that would accrue over the four

years.   The Stipulation includes a provision that should the Plaintiff file for bankruptcy, the

Debtor's obligation to make the monthly payments would be terminated. *Id.* at 9.   The Stipulation

further provides that "[n]either party under the circumstances are entitled to spousal maintenance

. . . ." *Id.*

         According to the Plaintiff, it was her understanding that the weekly payments of $50,

provided for in the Temporary Order of March 11, 2003, would cease, and she would receive

$230.15 per month in lieu of the other payments as continued temporary maintenance, which she

was to use to pay the credit card debt.   At the time of the divorce, she testified that she was

unemployed and receiving approximately $1,000 per month from her previous husband in child

support.   Under the terms of the Stipulation, the Debtor was also paying approximately $400 per

month in child support of their daughter.[5]   She testified that she received five payments of

$230.15 each from the Debtor under the terms of the Stipulation.   However, in February 2004 she

received a letter from Debtor indicating that he would no longer be making those payments and

---

[5] According to the Plaintiff, in April 2001 when the parties married, each had a minor son
by a prior marriage living with them.  Their daughter, Kimberly L. Sheer, who also resided with
them, was born on March 18, 2000.  *See* Debtor's Exhibit 4.

5

if she had any questions, she was to contact his attorney.  Plaintiff testified the last payment in

the amount of $230.15 that she received from the Debtor was in January 2004, and that ultimately

she commenced an action in State Court to recover the payments from the Debtor.  She testified

that she had obtained a judgment against the Debtor, only to have him file his chapter 7 petition

shortly thereafter.[6]

The Debtor filed a voluntary petition seeking relief pursuant to chapter 7 of the Code on

June 24, 2004.  Schedule F of that petition, listing unsecured creditors with nonpriority claims,

identifies the Plaintiff as a creditor with a claim of $8,500.  The Debtor testified that it was his

understanding that under the terms of the Stipulation, he would not have to pay the Plaintiff any

maintenance.  Instead, he was obligated to pay his share of the marital debt on the credit card

accounts, which were all in the Plaintiff's name.

### DISCUSSION

Whether an obligation is in the nature of alimony, maintenance or support for the purposes

of dischargeability pursuant to Code § 523(a)(5) is an issue for the Bankruptcy Court to determine

under federal bankruptcy law.  *In re Brody*, 3 F.3d 35, 39 (2d Cir. 1993).  It is the Plaintiff that

has the burden to establish that the debt is nondischargeable by a preponderance of the evidence.

*See Grogan v. Garner*, 498 U.S. 279 (1991).  Furthermore, the label given the obligation by either

the parties or the state court is not dispositive.  *Id.*

---

[6] Debtor failed to identify any lawsuits to which he was a party within the year prior to
filing.  *See* Statement of Financial Affairs, included with Debtor's Petition.

6

The Court's analysis under Code § 523(a)(5) rests on the parties' intent when they entered into the Stipulation on August 14, 2003, which was incorporated by reference in the Judgment of Divorce.  Among the factors traditionally utilized by courts in determining the actual nature of the obligation are the following: "(1) the label given the obligation in the decree, (2) the form and placement of the obligation in the divorce decree, (3) whether the obligation terminates on death, remarriage, etc., (4) the economic disparity between the parties, (5) the length of the marriage, (6) the presence of minor children, (7) whether a traditional support award would have been adequate in the absence of the obligation in question, (8) the age, employability, and educational level of the parties, and (9) the financial resources, actual or potential, of each spouse" at the time of the decree." *In re Cuseo,* 242 B.R. 114, 119 n.9 (Bankr. D..Conn. 1999).

In this case, the obligation was established in the Stipulation placed on the record in State Court.  While the Debtor's counsel represented to the State Court that the provisions in the Stipulation followed "much consideration on the issues of equitable distribution," the Court believes that such a representation is but one factor to be considered.  Because the obligation was contained in a Stipulation on the record and not in any particular provision of the Judgment of Divorce under a heading of "maintenance" or "equitable distribution," it is not possible to consider this particular factor.  There is no provision to terminate the obligation upon the Plaintiff's death or remarriage.  The Stipulation does provide, however, that it is to terminate if the Plaintiff files bankruptcy, arguably under the belief that her credit card debt would be discharged as a result of that filing.  With respect to the disparity of income, Plaintiff testified that at the time the parties entered into the Stipulation, she was unemployed.  The Debtor presented evidence that in 2003 his gross earnings amounted to $30,888.  *See* Debtor's Exhibit 1.  With

respect to the fifth factor, the parties had been married for approximately two years when the Stipulation was entered into by them.  There is one minor child of the parties, a daughter, who was three years old when the Stipulation was placed on the record.  Debtor presented evidence that $93.25 is being taken from his wages on a weekly basis as child support pursuant to the terms of the Stipulation.  *See* Debtor's Exhibit 2.  With respect to the last three factors, the only evidence presented concerned the Debtor's earnings in 2003 of approximately $30,000 and Plaintiff's unemployment at the time.  There was no evidence concerning the parties' ages and their employability, other than Plaintiff's testimony that she was unemployed due to a medical condition and a reference in the Stipulation to the possibility of future employment by the Plaintiff which would impact on her share of health care costs for the minor child.  *See* Debtor's Exhibit 3 at 5.

The Court has considered these factors and the evidence presented.  The Court concludes that the obligation to pay $230.15 per month for 48 months is not in the nature of support.  The parties simply intended to split the marital debt.  The Debtor was given credit for the fact that the Plaintiff was to receive the 1989 Chevrolet Corvette, as well as the 2002 income tax refunds, in calculating the balance of the credit card debt that the parties were to split.  Plaintiff testified that she understood that she was waiving the payments of $50 per week which were labeled in the Temporary Order of March 11, 2003, as "temporary spousal support," and which she testified were used to pay down the credit card debt.  Plaintiff further testified that the payment of $230.15 per month was calculated based on paying the credit card debt off within four years at an estimated interest rate of 13.5%.  The marriage was only of approximately two years' duration.  Courts have acknowledged that marriages of such short duration may not warrant an award of

8

maintenance. *See, e.g. Bemis v. Bemis*, 305 A.D.2d 739 (N.Y. App. Div. 2003) (awarding

maintenance of $75 per week for a period of one year after a marriage of approximately two and

one half years); *Hendershott v. Hendershott*, 299 A.D.2d 880 (N.Y. App. Div. 2002) (denying

maintenance to plaintiff in view of the short duration of the marriage).  The Plaintiff is receiving

child support for the minor child from the marriage of approximately $400 per month from the

Debtor.  In addition, she testified that she receives approximately $1,000 in child support from

her husband of a prior marriage.  The Stipulation provides that both parties agreed to waive

alimony or maintenance.  There was no discussion in the Stipulation concerning the parties'

earning potential and financial situation at the time, except that the Debtor intended to apply for

Child Health Plus.  Under the terms of the Stipulation, there was reference to the couple splitting

the costs of health insurance or uncovered medical expenses on a pro rata basis of 75% for the

Debtor and 25% for the Plaintiff "until such time as plaintiff becomes employed, at which time

that should be pro-rated based upon the parties' respective salaries." *See* Debtor's Exhibit 3 at

5.  There is nothing in the evidence presented that convinces the Court that there was an intent

that the Debtor's payment of approximately $8,500, representing half of the amount owed on

Plaintiff's credit card debt, serve as support for the Plaintiff.  Admittedly, having to meet those

payments herself will impact on the monies available to her to meet her daily needs in supporting

herself.  However, the Court concludes that the payments were simply an equitable distribution

of the parties assets and liabilities during the course of the brief marriage.  Because the complaint

did not assert a cause of action pursuant to Code § 523(a)(15), the Court need not consider

whether the property settlement might be nondischargeable on that basis, despite the finding that

it was not in the nature of support.

9

Based on the foregoing, it is hereby

ORDERED that the Plaintiff's Complaint seeking a determination of nondischargeability of the debt owed to her by the Debtor[7] pursuant to Code § 523(a)(5) is denied.


Dated at Utica, New York

this 1st day of June 2006


/s/    Hon. Stephen D. Gerling
STEPHEN D. GERLING
Chief U.S. Bankruptcy Judge

---

[7] No proof of a judgment entered in favor of the Plaintiff sometime after January 2004 in State Court for the Debtor's alleged failure to comply with the terms of the Stipulation was admitted into evidence at the trial on December 5, 2005. To the extent that one exists, the Court's findings herein preclude any attempt by the Plaintiff to execute on that judgment given the determination that the debt, which constituted the liability underlying the judgment, is dischargeable.